**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SUTHERLAND GLOBAL SERVICES, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TOAST, INC.,**<br><br>**Defendant.** | **Civil Action No. 26-40110-BEM** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**MURPHY, J.**

This is an action arising out of a contract dispute between Plaintiff Sutherland Global Services, Inc. ("Sutherland") and Defendant Toast, Inc. ("Toast"). Sutherland and Toast entered into a services agreement which Toast terminated in 2024. Sutherland alleges Toast was obligated to pay wind down expenses of over $1.4 million at the time of termination. Toast reads the contract differently, arguing that the contracts at issue do not require payment to Sutherland. Sutherland brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. For the foregoing reasons, the Court will deny Toast's motion to dismiss.

## I. Factual & Procedural Background

The Court draws the following facts from Sutherland's complaint, Dkt. 1 ("Complaint" or "Compl."), and accepts them as true for the purposes of the instant motion.

Sutherland, a New York corporation, "provides customer support[] and end-user technical support" to industries such as "technology, healthcare and manufacturing." *Id.* ¶¶ 1, 6. Toast, a

"restaurant management software company," is a Delaware corporation, headquartered in Boston, Massachusetts. *Id.* ¶¶ 2, 7.

On October 29, 2021, Sutherland and Toast entered into a Master Services Agreement (the "MSA") whereby Sutherland agreed "to provide customer support and end-user technical support" to Toast. *Id.* ¶ 8; *see also* Dkt. 1-1. While the MSA set the framework for Sutherland and Toast's relationship, it contemplated that the parties and their affiliates may enter into statements of work, for "more specific services." Compl. ¶ 9. On or around November 1, 2021, Toast and a Sutherland affiliate entered into one such statement of work (the "SOW").[1] *Id.* ¶ 10; *see also* Dkt. 1-4. By the terms of the SOW, Sutherland was to "provide technical support for Toast's point of sale system."[2] Compl. ¶ 11. By 2024, Sutherland had hired "over 165 employees" to fulfill its obligations under the SOW. *Id.* ¶ 14.

The SOW was a two-year agreement, "that would renew automatically" each year, beginning at the end of the initial two-year term. *Id.* ¶ 13. If, however, Toast terminated the SOW "for convenience," the MSA provided that "[Toast] must pay Sutherland . . . the termination fee that is set forth in the applicable [SOW]." Dkt. 1-1 at 19; *see also* Compl. ¶¶ 15–16. The SOW included a table of "anticipated" termination fees "over three years" at Schedule 2.9. Compl. ¶¶ 18–19; Dkt. 1-4 at 19.[3]

---

[1] Both the MSA and SOW are governed by Massachusetts law. Dkt. 1-1 at 22.

[2] Sutherland was eventually substituted for the affiliate pursuant to an amendment to the SOW executed on April 2, 2024. Compl. ¶ 10 n.1.

[3] The Court provides a copy of Schedule 2.9 of the SOW below. Dkt. 1-4 at 19.

## Schedule 2.9 — Term and Termination

**Initial Term.** The Initial Term of this SOW (the "Initial Term") will commence on the SOW Effective Date and continue for a period of two (2) years unless otherwise renewed or terminated in accordance with the termination provisions in the MSA.

**Termination Fees.** This SOW will follow the MSA in its interpretation of Termination Fees as outlined in Sections 17.3 of the Agreement.

| Per FTE | Yr-1 | Yr-2 | Yr-3 |
|---|---|---|---|
| Wind Down -Expenses* | $ 4,980 | $ 4,980 | $ 4,980 |
| Supplier Investments | $ 4,510 | $ 2,880 | $ 1,380 |
| Total | **$ 9,490** | **$ 7,860** | **$ 6,360** |

* The above stated amounts represent Sutherland's good faith estimate as to the amount of such Expenses as of the SOW Effective Date. The amounts stated above will be adjusted to reflect Sutherland's actual Wind Down Expenses associated with Client's exercise of its right to terminate the Agreement or this SOW for its convenience as more fully described in the Agreement

**Expiration of the MSA, Continuing Obligations.** Expiration of the MSA will not create a termination event of this SOW unless this SOW is also specifically terminated, and the applicable terms and conditions of the MSA will continue to govern this SOW.

**Termination of the MSA.** Subject to the provisions of the MSA, termination of the MSA will result in the termination of this SOW by operation.

On November 4, 2024, a few days into the fourth year of the parties' contractual relationship, Toast notified Sutherland that it intended to terminate the SOW. Compl. ¶ 15; *see generally* Dkt. 1-5. On November 12, 2024, Sutherland sent Toast a demand for "wind down expenses" of $1,461,160.58. Compl. ¶¶ 21–22. Sutherland alleges "these costs were contemplated and defined" in the SOW. *Id.* ¶ 21. Toast denied liability as to the expenses. *Id.* ¶ 23.

Sutherland filed the Complaint on April 15, 2026. *See generally* Compl. Sutherland raises three claims against Toast: breach of contract (Count I), *id.* ¶¶ 27–32; breach of the implied covenant of good faith and fair dealing (Count II), *id.* ¶¶ 33–35; and unjust enrichment (Count III), *id.* ¶¶ 36–38. Toast moved to dismiss on June 22, 2026. Dkts. 16–17.

## II. <u>Legal Standard</u>

Courts analyzing claims under Federal Rule of Civil Procedure 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## III. Discussion

### A. Count I: Breach of Contract

Sutherland alleges that Toast breached the MSA by failing to pay termination fees as required in the MSA and outlined in the SOW. Compl. ¶¶ 27–32. Toast argues that the express terms of the SOW foreclose any termination fee payments beyond three years. Dkt. 17 at 11–16.

"A court interpreting a contract must first assess whether the contract is ambiguous." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022) (quoting *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 783 (1st Cir. 2011)). If the contract language is ambiguous, "then the Court need not resolve those ambiguities at this stage, and the breach-of-contract claim proceeds." *Nantucket Wine & Food Festival, LLC, v. Gordon Cos., Inc.*, 2024 WL 5442384, at *3 (D. Mass. Oct. 31, 2024).

Toast argues the SOW, which includes a table at Schedule 2.9 outlining expenses for three years, expressly obligates Toast to pay termination fees *only* in the first three years.[4] Dkt. 17 at 11. The MSA requires Toast, upon termination, to pay expenses "set forth in the applicable [SOW]." Dkt. 1-1 at 19. Toast argues it was under no obligation to pay termination fees beyond the third year, "by the plain terms of the SOW." Dkt. 17 at 11. Toast asserts that by omitting a

[4] Toast attempts to distinguish between "termination fees" and "Wind Down Expenses." Dkt. 17 at 12–13. But the MSA explicitly states that the termination fees are "set forth in the applicable [SOW]." Dkt. 1-1 at 19. The SOW, in turn, defines "Termination Fees" as "defined in Schedule 2.9 of the SOW." Dkt. 1-1 at 5. Schedule 2.9 lists Wind Down Expenses as a line item. *Id.* at 19. Accordingly, "Wind Down Expenses" fall within the definition of "termination fees."

fourth year from the Schedule 2.9 table, the parties intended termination fees to cease "beyond [year] [t]hree." *Id.* at 12.[5]

Sutherland reads the MSA and SOW quite differently. It argues that the MSA and SOW do not foreclose termination fees in the fourth year. Compl. ¶ 20. On the contrary, Sutherland asserts that "the MSA and SOW provisions require payment *irrespective* of which year Toast elects to terminate the SOW." Dkt. 26 at 8 (emphasis added); *see also* Dkt. 1-1 at 19 ("If [Toast] terminates a [SOW] for convenience, then [Toast] must pay Sutherland . . . the termination fee that is set forth in the applicable [SOW]."). Sutherland construes Schedule 2.9, which only defines termination fees for three years, as merely an "estimate" that "extrapolated the anticipated fees over three years to provide an example of how fees would vary from year-to-year." Compl. ¶¶ 18–19. Schedule 2.9 itself states that the table of termination fees are a "good faith estimate" that "will be adjusted" in the event of an actual termination by Toast. Dkt. 1-4 at 19. The fact that the SOW automatically renews, Sutherland argues, implies that termination fees should extend beyond three years. Dkt. 26 at 9–10; *see also* Dkt. 1-1 at 11 ("[E]ach [SOW] will automatically renew for successive one (1) year terms, with the same terms and conditions.").

Both parties present compelling arguments, though neither interpretation carries the day. On the limited record currently available, the Court determines that the MSA and SOW are ambiguous as to whether termination fee obligations continued through renewal periods after the

[5] Toast also argues that, because Sutherland drafted the SOW, any ambiguities should be read against Sutherland. Dkt. 17 at 14 (claiming that the "MSA and SOW are Sutherland form agreements."). Neither the Complaint nor the agreements themselves state that they are Sutherland "form contracts," a characterization Sutherland denies in its opposition. Dkt. 26 at 14. What is more, there is a dispute as to whether Sutherland was, in fact, the sole drafter of the relevant provisions of the SOW. *See id.*; *see also* Dkt. 25 ¶¶ 9–10 (alleging that a member of Toast's in-house legal team "completely rewrote" Schedule 2.9); Dkt. 25-1 at 92. Instead of prematurely resolving that factual dispute, the Court will decline to construe the contract against Sutherland.

third year.[6] Because the relevant provisions are ambiguous, the Court cannot grant a motion to dismiss. *Aware, Inc. v. Centillium Commc'ns, Inc.*, 604 F. Supp. 2d 306, 310 (D. Mass. 2009) ("If the language of a contract is ambiguous a motion to dismiss must be denied."). Accordingly, Toast's motion to dismiss is denied as to Count I.

### B. Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing

Sutherland alleges that Toast violated the implied covenant of good faith and fair dealing when it terminated the SOW and refused to pay termination fees. Compl. ¶¶ 33–35. Toast moves to dismiss, only insofar as "to the extent the Court dismisses Sutherland's claim for breach of contract . . . Sutherland's claim for breach of the implied covenant cannot survive." Dkt. 17 at 17.

Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (quoting *UNO Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004)). To determine whether there was a violation of the covenant, Massachusetts courts "look to the party's manner of performance" to infer "lack of good faith." *Robert & Ardis James Found. v. Meyers*, 474 Mass. 181, 189 (2016) (quoting *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 82 (2014)). "A breach occurs when one party violates the reasonable expectations of the other." *Chockel v. Genzyme Corp.*, 449 Mass. 272, 276 (2007). "The scope of the covenant is only as broad as the contract that governs the particular relationship." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005), *cert. denied sub nom., Globe Newspaper Co. v. Ayash*, 546 U.S. 927 (2005).

As alleged, Toast's alleged refusal to pay termination fees, "injur[ed] [Sutherland's] rights to the fruits of the contract." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013).

---

[6] The parties also dispute whether the termination fees include payment for severance of Sutherland's employees. Dkt. 17 at 14–16; *see also* Dkt. 26 at 15–16. Having determined that the contracts are ambiguous as to whether termination fees are owed at all, the Court declines to evaluate the scope of those fees at this early stage.

Toast's alleged actions were a "conscious doing of wrong" sufficient, at this stage, to plausibly constitute a breach of the implied covenant. *edv & cap group v. Scopic Software LLC*, 771 F. Supp. 3d 33, 49 (D. Mass. 2025) (quoting *Clinical Tech., Inc. v. Covidien Sales, LLC*, 192 F. Supp. 3d 223, 237 (D. Mass. 2016)). Toast's motion to dismiss is therefore denied as to Count II.

**C. Count III: Unjust Enrichment**

Sutherland also alleges that Toast's refusal to pay termination fees constitutes unjust enrichment. Compl. ¶¶ 36–38. Toast argues that the MSA and SOW "thoroughly cover[]" the dispute and that, accordingly, Sutherland is prohibited from also claiming unjust enrichment. Dkt. 17 at 18. Sutherland, in opposition, clarifies that its unjust enrichment claim is pled in the alternative. Dkt. 26 at 19.

It is well-established in Massachusetts law that a plaintiff may plead unjust enrichment in the alternative to breach of contract. *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) ("[I]t is accepted practice to pursue both theories at the pleading stage."); *see also PerkinElmer Health Scis. Inc. v. LabQ Clinical Diagnostics LLC*, 673 F. Supp. 3d 69, 71 (D. Mass. 2023) ("Plaintiff will eventually need to choose which theory of recovery to pursue but there is no need to do so at this early stage in the litigation." (internal quotation marks omitted)).

Even still, Toast argues that because a contract clearly exists between the parties, "an unjust enrichment claim cannot survive." Dkt. 17 at 17. Courts can and do dismiss unjust enrichment claims where "the contractual arrangement between the parties . . . does explicitly cover the dispute." *Id.* (quoting *Salls v. Digit. Fed. Credit Union*, 349 F. Supp. 3d 81, 89 (D. Mass. 2018)). However, "unjust enrichment may be [pled] in the alternative where 'ambiguity in [a] contract casts doubt on whether a breach of contract claim was indeed available as a legal remedy for the plaintiff.'" *Barkhordar v. President & Fellows of Harvard Coll.*, 544 F. Supp. 3d 203, 214 (quoting *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 84 (1st Cir. 2020)). Such is the case here,

where the Court has identified ambiguity in the relevant portions of the MSA and SOW. *See supra* Section III.A. Accordingly, Toast's motion to dismiss is denied as to Count III.

## IV. Conclusion

For the foregoing reasons, Toast's motion to dismiss is DENIED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: August 26, 2026